COOLEY LLP
REUBEN H. CHEN (228725) (rchen@cooley.com)
3175 Hanover Street
Palo Alto, CA 94304-1140
Telephone:    (650) 843-5000
Facsimile:    (650) 849-7400

DOUGLAS A. DOZEMAN (*Pro Hac Vice*)
ddozeman@wnj.com
JANET L. RAMSEY (*Pro Hac Vice*)
jramsey@wnj.com
R. MICHAEL AZZI (*Pro Hac Vice*)
razzi@wnj.com
WARNER NORCROSS & JUDD LLP
111 Lyon, NW, Suite 900
Grand Rapids, MI 49503
Telephone:    (616) 752-2000

Attorneys for Defendants
STRIDE RITE CHILDREN'S GROUP LLC,
AMAZON.COM, INC. AND ZAPPOS IP, INC.

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| SHEN KO TSENG,<br><br>        Plaintiff,<br><br>v.<br><br>STRIDE RITE CHILDREN'S GROUP LLC,<br>AMAZON.COM, INC. AND ZAPPOS IP, INC.<br><br>        Defendants. | Case No.: 3:13-cv-5538-CV<br><br>**DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION TO ENFORCE SETTLEMENT AGREEMENT BETWEEN THE PARTIES AND, IN THE EVENT SETTLEMENT IS NOT ENFORCEABLE, TO REOPEN THE CASE** |

**INTRODUCTION**

The issue before the Court is whether the parties reached an enforceable settlement agreement based on settlement discussions and correspondence between their respective counsel. The answer is "no." As set forth in more detail below, the parties at no time had an agreement as to all material settlement terms as required under California law to resolve this patent lawsuit. To the contrary, one of the most important settlement terms—the scope of the release Plaintiff would provide in exchange for settlement payment from Defendant Stride Rite Children's Group

LLC ("Stride Rite")[1]—was never agreed to and remains unsettled. The parties' respective drafts of the written settlement agreement and communications regarding the release have further highlighted the fundamental disagreement on this issue.

Plaintiff maintains that the scope of the release is quite narrow—covering only the shoes named in Plaintiff's Amended Complaint (as well as one additional model called Vroomz that was identified by Plaintiff in mediation). By contrast, Stride Rite maintains that the release of all claims "with prejudice" means that Plaintiff cannot bring such claims in the future against any Stride Rite shoe with the same or similar construction. This difference in understanding became clear in the drafts of the settlement agreement exchanged by the parties subsequent to counsel's "agreement in principle" during a telephone conference on November 7, 2014. Because the parties never came to a meeting of the minds on a fundamental term—the scope of the release—there is no settlement agreement to enforce. Plaintiff's Motion should be denied.

## FACTUAL BACKGROUND

Plaintiff filed his Complaint on November 28, 2013, alleging that Defendants infringed U.S. Patent 7,500,761 (the "'761 Patent"), which covered a particular lighting sequence construction in an LED light package. In his original Complaint, Plaintiff alleged that two different Stride Rite shoes infringed his patents—the Star Wars Morphing Lightsaber shoe, and the Star Wars Jedi to Sith shoe. (Dkt. # 1.) On April 15, 2014, Plaintiff filed an Amended Complaint, identifying an additional Stride Rite shoe—the Star Wars Balance of the Force shoe—that allegedly infringed the '761 Patent. (Dkt. # 35.) In his Amended Complaint, Plaintiff also alleged Stride Rite infringed U.S. Patent 7,405,674—a patent covering another particular lighting sequence construction in LED light package—asserting that Stride Rite's

---

[1] Stride Rite shoes are at issue in this lawsuit, and Stride Rite is the lead Defendant. Accordingly, Stride Rite is the defendant referred to throughout this Response. The alleged "settlement agreement" at issue applied to all Defendants, however, and the Response is filed on behalf of all Defendants.

Racer Lights Velocity shoe infringed the '674 Patent. Each of the shoes identified in Plaintiff's Amended Complaint are examples of designs of children's shoes in the market with LED lights. Plaintiff served his infringement contentions on Stride Rite on June 7, 2014, for each of the above shoes, as well as an additional shoe that allegedly infringed the '674 Patent—the Stride Rite Starpower shoe.

Stride Rite responded that Plaintiff's patents were invalid and that, in any event, the shoes did not infringe. LED light packages, of course, have been around for decades, and the field of art is crowded. Stride Rite served its invalidity contentions on Plaintiff on July 22, 2014, and also outlined its non-infringement contentions in response to Plaintiff's interrogatories on August 22, 2014.

As directed by the Court's Case Management Order, the parties attended a facilitative mediation on October 6, 2014. (Dozeman Aff. ¶ 3.) Entering mediation, the parties were very far apart. Plaintiff asserted that he was entitled to $25 million in damages as set forth in his Rule 26(a) disclosures (Ex. A), while Stride Rite maintained that Plaintiff's claims were completely meritless. (*Id.* ¶ 3.) While the mediation narrowed the monetary gap significantly, the parties remained far apart on virtually every issue and the mediation was not successful. (Dozeman Aff. ¶ 4.) The parties were to proceed with motions for summary judgment and claim construction briefs, with Plaintiff's submissions due on November 7, 2014. (Dkt. #51.) In late October, however, Plaintiff asked if Stride Rite was still interested in discussing settlement and a series of email correspondence ensued. (Dozeman Aff. ¶ 5; Ex. B.) Most of this correspondence had to do with the amount of the settlement payment, although there were discussions about liability issues (Ex. B.) There was virtually no discussion about the scope of any release. (Dozeman Aff. ¶ 5; Ex. B.)

On November 7, 2014, in a telephone conference between Mr. Pagodin and Mr.

Dozeman, counsel reached a tentative agreement, which included a settlement amount ($80,000) and a release as to all claims. (Dozeman Aff. ¶ 6.) Counsel did have a discussion during this call about what a "release of all claims" meant. (*Id.* ¶ 7.) Mr. Pagodin first contended that it covered only the shoes listed in the Amended Complaint. (*Id.*) Mr. Dozeman disagreed with this for at least two reasons. (*Id.*) First, Mr. Dozeman reminded Plaintiff's counsel that he had surprised Stride Rite at mediation with claims about a new shoe (the "Vroomz" shoe) that had never been mentioned before in Plaintiff's pleadings or discovery requests. (*Id.* ¶ 8.) So Mr. Dozeman insisted that the release had to cover any claims that were made, or <u>that could have been made</u>, at the time of the settlement. (*Id.*) Second, Mr. Dozeman made it clear that Stride Rite had no interest in settling only past claims without covering future claims for the same activities. (*Id.* ¶ 9.) Therefore, Mr. Dozeman insisted that the dismissal of Plaintiff's claims had to be "with prejudice," meaning that Plaintiff could not bring the same claims in the future against the accused shoes (or any shoes with non-material changes in construction). (*Id.*) As Mr. Dozeman told Plaintiff's counsel in the November 7, 2014 call, Stride Rite was not interested in settling the case today only to be sued for the same activity tomorrow. (*Id.*) At the end of the call, Mr. Dozeman was led to believe that Plaintiff's counsel agreed to this position. (*Id.* ¶ 10.)

After the call, Mr. Dozeman confirmed that Stride Rite would increase the settlement amount to $80,000 in return for a "release of all claims," which Mr. Dozeman understood to have the meaning described above. (*Id.* ¶ 11; Ex. C at 2.) Plaintiff's counsel responded with a confirmation at 11:47 p.m. his time (2:47 a.m. EST, where Stride Rite's counsel is located) stating that the settlement was in exchange for a "release of any and all claims raised in the lawsuit." (Ex. C at 1.)

It quickly became apparently that the parties had quite different views of what "a release

of all claims" meant. Stride Rite thought this meant that Plaintiff would not be able to make the same claims on the shoes released (and any other shoe of similar construction). (Dozeman Aff. ¶ 12.) Stride Rite's draft language in the proposed settlement agreement reflected that concept, and released all claims against "Stride Rite Products," which was a defined term meaning any Stride Rite footwear with an LED circuit manufactured or sold prior to the settlement agreement, as well as any such footwear sold after the settlement agreement that included the same or any non-material variation of such LED circuits. (*Id.* ¶ 14; Ex. D.)[2]

Plaintiff's response was to suggest a far narrower release, limiting the release to cover only the specific products identified in Plaintiff's Amended Complaint, plus the Vroomz shoes that had been identified during mediation. (Ex. D (proposed track changes).) Plaintiff's proposed release would cover future products only if they did not contain the elements of Plaintiff's patents (*i.e.*, future products would be released only if they did not infringe). (*Id.*) This, of course, gave Stride Rite nothing at all with regard to future sales. This left Plaintiff free to bring the exact same claims in the future. The parties tried on a number of occasions to narrow their differences over the scope of the release, but ultimately they reached an impasse. Despite the fact that the parties clearly disagreed on a fundamental term—the scope of the release—Plaintiff filed this motion to enforce its version of the settlement agreement.

## ARGUMENT

For a settlement agreement to be enforceable under California law, the parties must have (1) agreed on all material terms; (2) agreed to the settlement terms themselves or authorized counsel to settle on their behalf; and (3) intended to be bound by the agreement. *Callie v. Near*, 829 F.2d 888, 890 (9th Cir. 1987); *see also Millennium Dental Techs., Inc. v. Fotona*, No. 09-cv-1792, 2010 WL 3835056, at *13 (C.D. Cal. Sept. 30, 2010). Here, because the parties never

---

[2] Defendants' originally asked for a broader release, including a paid-up license, but that request was later dropped. (*Id.* ¶ 14.)

agreed to the scope of Plaintiff's release of claims against Stride Rite—clearly a material term to any settlement agreement, particularly in the patent context—there was no enforceable settlement agreement. Plaintiff's Motion should be denied.

Throughout the parties' settlement discussions, including the November 7, 2014, telephone call between Mr. Pagodin and Mr. Dozeman on which Plaintiff so heavily relies, Mr. Dozeman was clear that to settle the lawsuit, Stride Rite required finality in the form of:

(1) a complete release of *all* claims Plaintiff brought or could have brought related to any LED circuit design Stride Rite used in its light-up children's shoes; and

(2) that these claims be released with prejudice, *i.e.*, that the same claims could not be brought in the future against the same, or substantially similar, shoes.

(Dozeman Aff. ¶¶ 7-11.) This release was necessary to ensure that any claims Plaintiff had that were based on Stride Rite's current shoe designs—not just with respect to the shoes specifically identified in the Amended Complaint—were addressed. (*Id.* ¶ 7-11, 17.) Stride Rite was (and is) of the opinion that Plaintiff's claims against them are devoid of any legal or factual merit, but were willing to pay a settlement in order to get rid of the case, but only if that meant getting rid of the case for good. (*Id.*) Stride Rite had no interest in fighting over the same frivolous claims six months from now. (*Id.*) Based on counsels' November 7, 2014, phone call, Stride Rite's counsel believed the parties mutually shared this understanding. (*Id.* ¶ 10-11.) But as the parties' subsequent settlement discussions clearly evidence, no such agreement ever existed. (*Id.* ¶¶ 13-15.) Accordingly, a material term remains in dispute, and there is no settlement to enforce. *Callie v. Near*, 829 F.2d at 890 (holding agreement as to all material terms must exist for settlement to be valid and enforceable).

Indeed, the last draft of the settlement agreement highlights how far apart the parties remain, as evidenced by the parties' diverging definitions of "Stride Rite Products" covered

under the release. (*Id.*; Ex. D.)  The parties' written correspondence at the time of the alleged settlement further evidences their disagreement.  In Mr. Dozeman's November 7, 2014, email to Mr. Pagodin, Mr. Dozeman confirmed authority to settle the case for $80,000 in return "for a release on <u>all</u> claims." (Dozeman Aff. ¶ 11; Ex. C at 2.)  Rather than simply acknowledge agreement on this broad release, Mr. Pagodin subsequently responded that his client agreed to "release any and all claims <u>raised in this lawsuit</u>," and that the release would only apply "<u>to the specific Stride Rite products referred to in the complaint and, in addition, to the vroomz [sic] shoe products</u>, which were not mentioned in the complaint." (Dozeman Aff. ¶ 12; Ex. C at 2 (emphasis added).)  This was not what Mr. Dozeman agreed to, nor did Stride Rite authorize settlement in exchange for this much narrower release. *Callie v. Near*, 829 F.2d at 890 (holding party must authorize counsel's settlement authority for settlement to be valid and enforceable). The fact that Mr. Dozeman did not immediately object to Mr. Pagodin's language (which was received at 2:47 a.m. on a Saturday morning) certainly does not show agreement. (Ex. C.)  Mr. Dozeman's position on the scope of the release had been made clear, and was again made clear in every written draft of the settlement agreement. (Dozeman Aff. ¶ 15; *see, e.g.*, Ex. D.)  There was simply no meeting of the minds on the scope of the release.

     Indeed, to settle on the terms Plaintiff proposes would be wholly inconsistent with Stride Rite's repeated statements that it needed finality, particularly given Plaintiff's previous conduct in identifying Stride Rite shoes outside the Amended Complaint and not at issue in the lawsuit (*i.e.*, the Vroomz shoes identified right before mediation) as allegedly infringing.  Stride Rite reasonably believed that this material disagreement regarding the release could be addressed in subsequent negotiations, but as evidenced by Plaintiff's Motion and correspondence between the parties, the issue proved impossible to resolve.

Finally, Plaintiff's reliance on *Eitel v. McCool*, 782 F.2d 1470 (9th Cir. 1986), is misplaced, because unlike this case, in *Eitel* there was no issue regarding future conduct because the parties' relationship had ended. In *Eitel*, the plaintiff had sued the defendant for legal malpractice and the attorney-client relationship had ended. *Id.* The parties ultimately orally agreed, through their authorized representatives, to resolve the issue for $40,000.00. *Id.* Defendant claimed that plaintiff agreed to sign a general release of claims, while the plaintiff argued he only agreed to a dismissal with prejudice. *Id.* The district court found that an agreement had been reached, reasoning that given the nature of the legal malpractice action (the parties' only relationship was the attorney-client relationship at issue, and no future claims could arise given that defendant no longer represented the plaintiff) a dismissal with prejudice was the "functional equivalent of a mutual general release." *Id.* The Ninth Circuit agreed. *Id.* This patent infringement lawsuit markedly differs from *Eitel*, as a dismissal with prejudice would <u>not</u> be the functional equivalent of a general release of claims. Because future activities will be at issue here (unlike the case in *Eitel*) Defendants insisted on finality (dismissal with prejudice) with a general release. The parties never reached closure on this issue, so a settlement was never agreed to.

## CONCLUSION

The parties have not reached a settlement in this action. Rather, a material disagreement remains regarding a critical settlement term—the scope of the release Plaintiff would provide to Stride Rite. Contrary to Plaintiff counsel's representations, the parties did not agree to all material settlement terms on November 7, 2014. The parties agreed on a lump-sum dollar figure, but not the release that payment would provide. Plaintiff's Motion should be denied and the lawsuit reinstated to proceed with dispositive motions and *Markman* briefing.

| | |
|---|---|
| Dated: March 2, 2015 | By: /s/ Douglas A. Dozeman<br>Douglas A. Dozeman (*Pro Hac Vice*)<br>Janet L. Ramsey (*Pro Hac Vice*)<br>R. Michael Azzi (*Pro Hac Vice*)<br>WARNER NORCROSS & JUDD LLP<br>111 Lyon, NW, Suite 900<br>Grand Rapids, MI  49503<br><br>Reuben H. Chen (228725)<br>Neil N. Desai (286405)<br>COOLEY LLP<br>3175 Hanover Street<br>Palo Alto, CA  94304-1140<br><br>*Attorneys for Defendants* |

12429560-2